IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| SARA ABDELKHALEK, | * | |
| Plaintiff, | * | |
| v. | * | Civ. No. 8:25-cv-01438-PX |
| WORKSOURCE MONTGOMERY, | * | |
| Defendant. | * | |
|  | *** | |

## MEMORANDUM OPINION

Plaintiff Sara Abdelkhalek ("Abdelkhalek") accuses her former employer, Defendant Worksource Montgomery ("Worksource") of failing to accommodate her disabilities, creating a hostile work environment, and retaliating against her for having engaged in statutorily protected activity. ECF No. 1. Worksource now moves to dismiss the Complaint. ECF No. 15. The issues are fully briefed, and the Court finds no hearing necessary. *See* D. Md. Loc. R. 105.6. For the reasons stated below, Worksource's motion to dismiss is GRANTED.

**I.     Background**

On October 10, 2023, Abdelkhalek began working for Worksource as a high school and middle school career coach. ECF No. 1 ¶¶ 7–9. Before she started, Worksource asked Abdelkhalek, as it does all employees, for her "preferred" placement in a geographic school zone. *Id.* Abdelkhalek submitted her zone preference. She also asked for placement near her home as an accommodation of her anxiety and Post Traumatic Stress Disorder ("PTSD"). *Id.* ¶ 11. Worksource manager Clifton Gadsden, in response, directed Abdelkhalek to "amend" her school zone preference to list "all other geographical zones." *Id.* ¶ 13. He mentioned nothing about her accommodation request. *Id.*

Abdelkhalek responded that due to her disabilities, she selected "Zone 5" because the schools in that zone are closest to her home and because the job posting advised that Worksource would take geographical preference into account. ECF No. 1 ¶ 14. Hearing nothing, Abdelkhalek next emailed all managers and Deputy Director, John Hattery ("Hattery"), requesting a response. *Id.* ¶ 16. Hattery responded that school selections had not been finalized, but Abdelkhalek also learned from another career manager that she would be assigned to a different zone than the one she preferred. *Id.* ¶¶ 17–18. Specifically, Abdelkhalek was assigned to a zone that included two schools, one in North Bethesda and the other in Silver Spring. *Id.* ¶¶ 18–19.

Abdelkhalek next raised her concern about the location of her assigned school zone in her first one-on-one meeting with her direct supervisor, Marla Wyche ("Wyche"). Abdelkhalek also asked if she could "swap" with the career coach assigned to Abdelkhalek's preferred zone. ECF No. 1 ¶¶ 21–22. She detailed for Wyche her medical conditions, and that as a survivor of gender-based violence in her native country, distance from her home escalates her anxiety. *Id.* Wyche responded that the zone assignments were Hattery's alone and, in any event, could not now be changed. *Id.* ¶ 23. However, Abdelkhalek learned that Worksource would consider reassignment in January 2024 when it planned to hire another cohort of coaches. *Id.* ¶¶ 23–24.

About two weeks into her employment, Abdelkhalek tested positive for COVID-19 and asked for time off. ECF No. 1 ¶ 26. Wyche evidently conditioned approval of this leave on Abdelkhalek's completing an overdue task, which Wyche required Abdelkhalek to submit by 10:00 the following morning. *Id.* Abdelkhalek submitted the assignment as directed but complained that Wyche's "aggressive" timeline "could trigger her anxiety." *Id.* ¶¶ 26–29.

Two days later, on October 27, Wyche required Abdelkhalek to participate in a virtual meeting and turn on her camera. ECF No. 1 ¶ 31. The required presence on video, according to

Abdelkhalek, exacerbated her anxiety. As a result, Abdelkhalek asked the Human Resources office to give her another direct supervisor as a reasonable accommodation. *Id.* ¶¶ 32–33. Hattery refused to change Abdelkhalek's supervisor. *Id.* ¶ 32. Abdelkhalek asked Hattery to explain why, and he instead asked her if she wished to resign. *Id.* Abdelkhalek also contacted the Human Resources office on November 6, 2023, to discuss "Dr. Wyche's effect on her disability." *Id.* ¶ 35.

Around the same time, and after Abdelkhalek had complained about Wyche, Wyche began to "mock" or "gratuitously mention Abdelkhalek's anxiety disorder in team meetings and with a sarcastic tone" suggesting that Ms. Abdelkhalek "could not handle assignments." ECF No. 1 ¶ 36. Wyche also "yelled" at Abdelkhalek and denied her requested extension of time on assignments. *Id.* ¶ 37. Abdelkhalek contends that because of this, she had two anxiety attacks at one of her assigned schools. *Id.* Abdelkhalek thus asked for another meeting with Human Resources in December of 2023 to discuss reassignment of her direct supervisor. *Id.* Abdelkhalek received no response.

Abdelkhalek next turned to Worksource employee Deborah Greco ("Greco")[1] to whom she reported her anxiety and asked about replacing Wyche as her direct supervisor. Greco responded that "she did not want to discuss Ms. Abdelkhalek's issues with Dr. Wyche," but she did ask Abdelkhalek to provide updated medical documentation. ECF No. 1 ¶ 39. Abdelkhalek agreed to provide the medical records to Greco but also asked that she receive some "flexibility for deadlines on assignments that are not time sensitive or high priority." *Id.* ¶ 40.

Greco denied that request but suggested they meet in person to discuss Abdelkhalek's situation. *Id.* ¶¶ 41–42. Greco also asked Abdelkhalek to bring her laptop so she could "finish

---

[1] The Complaint does not describe Greco's role or job responsibilities at Worksource.

some paperwork." *Id.* ¶ 42.  Abdelkhalek objected to the meeting because her doctor had "advised that she refrain from verbally narrating the details of the panic attack and triggering events, but instead complete a written intake form or other method of fact finding." *Id.* ¶ 43.  Greco, however, "insisted" that the meeting be in person, *id.* ¶ 44, but ultimately agreed to hold the meeting virtually with a Human Resources representative present.  *Id.* ¶ 45.

Again, Abdelkhalek complained to Human Resources that "their disregard of her medical condition exacerbates that very condition."  *Id.* ¶ 46.  But evidently, Abdelkhalek did not attend the scheduled meeting, and on December 27, 2023, Worksource fired her.  *Id.*

Abdelkhalek next filed suit in this Court on May 5, 2025, alleging that Worksource failed to accommodate her disabilities by, among other things, denying her placement close to her residence or giving her another supervisor (Count I); creating a hostile work environment (Count II); and firing her in retaliation (Count III), all in violation Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and the Maryland Fair Employment Practices Act ("MFEPA"), MD. CODE ANN., State Gov't §§ 20-601, *et seq.*  ECF No. 1 ¶¶ 50–69.  Lastly in Count IV, Abdelkhalek alleges a violation of the Family Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* and the Maryland Healthy Working Families Act, MD. CODE (2016 Repl. Vol., 2020 Supp.), §§ 3-1301 to 3-1311 of the Labor and Employment Article, against Worksource for failing to honor her request for sick leave.  *Id.* ¶¶ 70–75.  Worksource now moves to dismiss the Complaint entirely, arguing that Abdelkhalek's claims fail as a matter of law.  The Court considers each count separately.

## II.     Standard of Review

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint.  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir.

2006). The Court accepts "the well-pled allegations of the complaint as true," and construes all facts and reasonable inferences most favorably to the plaintiff. *Ibarra v. United States,* 120 F.3d 472, 474 (4th Cir. 1997). To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). The Court must be able to deduce "more than the *mere* possibility of misconduct"; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief. *See Ruffin v. Lockheed Martin* Corp., 126 F. Supp. 3d 521, 526 (D. Md. 2015), *aff'd in relevant part*, 659 F. App'x 744 (4th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

### III.    Analysis

#### A. Failure to Accommodate Claim under ADA and MFEPA (Count I)[2]

Turning first to the failure-to-accommodate claim, Worksource principally contends that the claim fails because no facts make plausible the purported denial of Abdelkhalek's request for an assignment close to her home. ECF No. 15-1 at 3–4. Worksource correctly notes that Abdelkhalek did *not* plead any facts about the relative distances of the actual versus requested

---

[2] The Complaint also does not include any facts to suggest that Abdelkhalek first exhausted administrative remedies as required under the ADA and MFEPA before filing suit. *See* S.G.§ 20-1004(c)(1)(i) (providing that "a complaint shall be filed" with the Maryland Commission on Civil Rights "within 6 months after the date on which the alleged discriminatory act occurred."); 42 U.S.C. § 2000e-5(e)(1) (requiring a formal charge to be filed with the Equal Employment Opportunity Commission within 180 days of the date of the alleged discrimination). *See also Sydnor v. Fairfax Cnty.*, 681 F.3d 591, 593 (4th Cir. 2012). The Court assumes she did, as Worksource does not argue to the contrary. Further, because lack of exhaustion does not act as a jurisdictional bar to suit, *see Fort Bend Cty. v. Davis*, 587 U.S. 541, 544 (2019), the Court will reach the merits of the claims in any event. *See also Rowlette v. Lifebridge Health*, No. CV RDB-18-2706, 2019 WL 5696841, at *2 (D. Md. Nov. 4, 2019) ("The import of *Fort Bend* is that Defendants may waive arguments related to administrative exhaustion by failing to raise them in a timely fashion. Timely raised, such objections may still warrant dismissal under Rule 12(b)(6) of the Federal Rules").

assignments. *Id.* at 3. Thus, says Worksource, no facts make plausible that Abdelkhalek's "preferred school" would better accommodate her disability.

Because MFEPA is the state statutory analogue to the ADA, the Court considers the claims together. *See Corrigan v. Baltimore Police Dep't*, No. CV ELH-24-03497, 2026 WL 73800, at *18 (D. Md. Jan. 9, 2026) (quoting *Destiny Charity Rose Teel v. Maryland Nat. Treatment Sols.*, LLC, RDB-23-1694, 2024 WL 1075421, at *4 (D. Md. Mar. 12, 2024)) (internal quotation marks omitted). *See also Allen v. Discovery Commc'ns*, LLC, PWG-15-1817, 2016 WL 5404558, at *7 (D. Md. Sept. 28, 2016) ("In addition to being the Maryland analogue to Title VII, 'the MFEPA has been labeled the 'Maryland State analogue to the ADA.'") (internal citation omitted). Both statutes require that employers provide reasonable accommodation for an employee's known disabilities. 42 U.S.C. § 12112(b)(5)(A); *Shin v. Univ. of Md. Med. Syst. Corp.*, 369 F. App'x 472, 479 (4th Cir. 2010) (quoting 42 U.S.C. § 12112(b)(5)(A)). To state a plausible failure-to-accommodate claim, the plaintiff must aver some facts to show that (1) she is an individual who had a disability and is otherwise qualified for her position, (2) the employer had notice of her disability, (3) the plaintiff could perform the essential functions of the position with reasonable accommodation, and (4) the employer refused to make such accommodations. *Wirtes v. City of Newport News,* 996 F.3d 234, 238–39 (4th Cir. 2021) (citing *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013)).

When viewing the Complaint facts most favorably to Abdelkhalek, nothing makes plausible that Abdelkalek's assigned zone did not adequately accommodate her disability. The Court knows nothing about the relative distance between the assigned schools to her home and the "preferred" school to her home such that it could assess the reasonableness of the request. Thus, the claim fails on this basis alone.

Alternatively, at the time Abdelkhalek made the request to switch to her "preferred" school, the career coach assignments had already been made. Accordingly, to accommodate her request, Worksource would have needed to oust an already-assigned coach. But the ADA does not recognize reassignment to an *unavailable* position as a reasonable accommodation. *See* 42 U.S.C. § 12111(9); 29 C.F.R. § 1630.2(o)(2)(ii); *Madison v. Hous. Auth. of Baltimore City*, No. CV RDB-21-997, 2021 WL 2936321, at *4 (D. Md. July 13, 2021) ("Defendant ignores the language in the definition of 'reasonable accommodation' that such an accommodation includes 'reassignment to a vacant position.'"). A requested accommodation is simply not actionable if it "would mandate that the employer bump another employee out of a particular position." *Schneider v. Giant of Maryland, LLC*, 389 F. App'x 263, 271 (4th Cir. 2010) (quoting *E.E.O.C. v. Sara Lee Corp.*, 237 F.3d 349, 355 (4th Cir. 2001)). Thus, the claim is not plausibly averred.

Nor has Abdelkhalek sufficiently pled that her request to report to a different supervisor was a reasonable accommodation. The consensus is that the accommodation request of changing supervisors is "unreasonable as a matter of law." *See also Smith v. Charter Commc'ns, Inc.*, No. 3:18-CV-80-MOC-DSC, 2020 WL 3606391, at *8 (W.D.N.C. July 2, 2020) ("Plaintiff's ADA accommodation claim fails because changing an employee's supervisor as an accommodation is unreasonable as a matter of law.") (collecting cases). Where, as here, the stated reason for the request is to reduce the employee's anxiety, the requested accommodation becomes even more untenable because it imposes "a wholly impractical obligation" on the employer to retool a supervisory plan based solely on the fluctuating stress levels of the supervisee. *See Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 579, 581 (3d Cir. 1998) (concluding that the "request to be transferred away from individuals causing [plaintiff] prolonged and inordinate stress was unreasonable as a matter of law under the ADA"). Thus, courts, including this one, have been reluctant to conclude

7

that a request to change supervisors to address stress or anxiety amounts to a "reasonable" accommodation. *Theilig v. United Tech Corp.*, 415 F. App'x 331, 333 (2d Cir. 2011) ("While there is no per se rule against a change in supervisor, '[t]here is a presumption . . . that a request to change supervisors is unreasonable, and the burden of overcoming that presumption . . . therefore lies with the plaintiff.'") (internal citation omitted); *Cardenas-Meade v. Pfizer, Inc.*, 510 F. App'x 367, 372 (6th Cir. 2013) ("[R]equests for re-assignment to a new supervisor are disfavored."); *Weiler v. Household Finance Corp.*, 101 F.3d 519, 524 (7th Cir. 1996) ("The major life activity of working is not 'substantially limited' if a plaintiff merely cannot work under a certain supervisor because of anxiety and stress related to his review of her job performance."). To countenance this request in this context as "reasonable" would impose "extraordinary burdens" on employers like Worksource not contemplated under the ADA. *Gaul*, 134 F.3d at 581. The claim thus fails.[3]

### B. Hostile Work Environment Claim under ADA and MFEPA (Count II)

Next, as to the hostile work environment claim, Worksource principally contends that the Complaint allegations amount to impermissible legal conclusions devoid of sufficient facts that make the claim plausible. ECF No. 15-1 at 5. The Court agrees. The Complaint must make plausible that Abdelkhalek not only suffered from a disability but was harassed based on her disability in a manner sufficiently severe or pervasive to alter a term, condition or privilege of employment. *See Fox v. Gen. Motors Corp.*, 247 F.3d 169, 177 (4th Cir. 2001). To survive challenge therefore, the Complaint must include some *facts*, not merely legal characterizations, so that the connection between the supposed hostile treatment and Abdelkhalek's disability is at least

---

[3] The "kitchen sink" approach to this claim does Abdelkhalek a disservice. The Complaint also seems to suggest that Worksource's failure to grant Abdelkhalek's requests to address her work limitations during COVID-19 amounts to denial of a reasonable accommodation under the ADA. It does not. Temporary physical illness alone does not constitute an ADA recognized disability, that is, "a mental or physical impairment that substantially limits one or more major life activities*." See Eubanks v. Mercy Med. Ctr., Inc.,* No. CV WDQ-15-513, 2015 WL 9255326, at *5 (D. Md. Dec. 17, 2015). *See also Hice v. Mazzella Lifting Techs.*, Inc., 589 F. Supp. 3d 539, 550 (E.D. Va. 2022) ("[P]ossible future exposure to COVID-19 does not constitute an impairment under the ADA.").

plausible. Merely averring, for example, that a plaintiff was subjected to nonspecific "differential and hostile treatment," such as "yelling," will not suffice. ECF No. 1 ¶¶ 60–62.

Perhaps the Complaint comes closest in averring that Wyche "would mock or gratuitously mention" Abdelkhalek's anxiety disorder "with a sarcastic tone" during team meetings. *Id.* ¶ 36. But this alone is too thin to make plausible that Abdelkhalek withstood more than the occasional offensive utterance. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993); *see also Fox*, 247 F.3d at 178 (same). Without more, the claim fails as a matter of law.

### C. Retaliation under ADA and MFEPA (Count III)

Worksource next faults Abdelkhalek for essentially failing to link her complaints about denied accommodations to her eventual termination. ECF No. 15-1 at 6. Retaliation under the ADA must make plausible that the plaintiff "(1) engaged in a protected activity; (2) her employer acted adversely against her; and (3) her protected activity was causally connected to her employer's adverse action." *Rhoads v. F.D.I.C.*, 257 F.3d 373, 392 (4th Cir. 2001) (citations omitted). An employee's request for accommodations constitutes protected activity under the ADA. *Sillah v. Burwell*, 244 F. Supp. 3d 499, 510 (D. Md. 2017) (citing *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 706 (4th Cir. 2001)). Moreover, temporal proximity between the alleged protected activity and the adverse action alone may give rise to an inference of retaliation. *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 579 (4th Cir. 2015).

When viewing the Complaint most favorably to Abdelkhalek, it fails to make plausible a causal link between her request for accommodations and her termination. Indeed, according to the Complaint, Worksource attempted to address Abdelkhalek's accommodations request by first obtaining her medical records and next scheduling a December meeting to discuss. ECF No. 1 ¶ 39. Greco even adjusted the format of the December meeting to be virtual as itself an

accommodation to Abdelkhalek's increasing anxiety. *Id.* ¶ 43. But then Abdelkhalek did not attend the meeting, which prompted her termination. *Id.* ¶ 46. Thus, the most temporally proximate act to her termination was not her request for accommodation, but her own failure to follow through on Worksource's efforts to engage Abdelkhalek on the same. In this important respect, the Complaint simply does not establish a plausible link between Abdelkhalek's proffering to Human Resources her need for accommodation and her termination. Thus, Count III must also be dismissed.

### D. Family Medical Leave Act and Maryland Healthy Working Families Act (Count IV)

Last, as to Count IV, neither the FMLA nor the MHWFA claim can proceed for reasons wholly apart from the merits of the claim. For the FMLA, an employee receives the statutory protection only after she has been employed "for at least 12 months by [the] employer with respect to whom leave is requested." 29 U.S.C. § 2611(2)(A)(i). Because Abdelkhalek worked for Worksource just over two months, ECF No. 1 ¶¶ 7, 47, she cannot sue for denial of leave under the statute.

Nor can the MHWFA claim proceed. ECF No. 15-1 at 7. Section 3-1308 of the MHWFA sets out the available remedies to covered employees. *See* MD. CODE ANN., Lab. & Empl. § 3-1308. Specifically, if an employee believes that an employer has violated this subtitle, the employee may file a written complaint with the Maryland Commissioner of Labor. § 3-1308(a). If the Commissioner sustains the employee's complaint, the Commissioner "shall direct the payment of the full monetary value of any unpaid earned sick and safe leave and any actual economic damages." § 3-1308(b)(2)(ii). If the employer fails to abide by the Commissioner's decision, only then may the employee "bring a civil action to enforce the order in the county where the employer is located." § 3-1308(c)(2)(ii). The statute, however, does not allow parallel civil

suit apart from the identified remedial action. *Id.  See also Logan v. Estes Env't, Inc.*, No. CV GLR-20-1444, 2023 WL 2585066, at *9 (D. Md. Mar. 21, 2023) ("[T]he proper way for an individual to pursue a MHWFA claim is through State administrative procedures and not as a claim in federal court.").  Thus, the claim must fail.

### IV.     Conclusion

Based on the foregoing, the Court grants Worksource's motion and dismisses the Complaint in its entirety.  ECF No. 15.  As to whether dismissal will be with or without prejudice, Abdelkhalek has not previously asked to amend the Complaint, and she should be afforded this opportunity as to Counts I through III.  *See Ostrzenski v. Seigel*, 177 F.3d 245, 252–53 (4th Cir. 1999) (explaining that a district court should not dismiss a complaint with prejudice under Fed. R. Civ. P. 12(b)(6) without first giving the plaintiff leave to amend).  Count IV, however, appears truly unamendable because the statutes do not afford Abdelkhalek a cause of action in this Court.  Thus, Count IV is dismissed with prejudice.  Within 14 days from the date of this Opinion and Order, Abdelkhalek may file an amended complaint to cure the pleading deficiencies identified in this decision, and within 14 days after such amended pleading is filed, Worksource shall answer or move to dismiss the amended claims.  Should Abdelkhalek not file an amended complaint within 14 days, the Complaint will be dismissed without prejudice and without further notice.

A separate Order follows.

   2/10/2026                                                               /s/
Date                                                                     Paula Xinis
                                                                               United States District Judge